## Owensboro Wheel Company v. Trammell.

(Decided December 5, 1916.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Number Three).

1. Sales—Construction of Contract.—Two distinct classes of articles having been enumerated in a separate clause of a contract of sale, followed by the words "and other stocks and supplies," these words held to mean other stocks and supplies of the same kinds as those enumerated.

2. Sales—Construction of Contract.—Plaintiff having sold to defendant all he had of certain articles could not enforce acceptance of a less quantity.

3. Sales—Rights of Seller.—The seller having delivered to the purchaser certain articles covered by the contract of sale, accompanied with an invoice at a greater price than the market value, which was the contract price, the purchaser is not bound to return the articles or pay the invoice price, but may retain same with no other liability than the contract price, with interest from date of delivery.

FRED FORCHT, E. B. ANDERSON and L. R. CURTIS for appellant.

O'NEAL & O'NEAL and HENRY J. TILFORD for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Prior to June, 1912, appellee was engaged in the manufacture of wheels in Louisville, Kentucky, and appellant and the Standard Wheel Company were engaged in the same business in Owensboro, Kentucky, and Terre Haute, Indiana, respectively. For the purpose of removing appellee as a competitor, appellant and the Standard Wheel Company purchased of appellee his wheel manufacturing plant, materials and supplies, to evidence which two written contracts were executed on the 14th of June, 1912, by one of which appellee sold to appellant and its associate, the Standard Wheel Company, certain designated wheel machinery for $15,000.00, and by the other contract he sold them his stock of material at certain specified prices, closing this latter contract with the following clause, which is the only part of either of said contracts involved in this controversy:

"All tire steel, felloe plates, bolts, screws, rivets, glue, sandpaper, sand, sand belts, flanges, and other stock and supplies not excluded to be at market values."

As a guide for the construction of this contract appellant insists upon the rule *ejusdem generis,* and correctly so, we think, although we are unable by that rule to reach the conclusion counsel for appellant seems to think its application enforces. The contract in which this clause appears begins with this sentence: ''I hereby agree to sell you the following wheel material I have on hand at Louisville as well as spokes I may have or produce at Gallatin, Tennessee,'' and after specifying certain materials closes with the above clause; from which it is clear that this contract was intended to cover material as distinguished from machinery which was covered by the other contract. Having this difference in the two contracts in mind, let us now see what the clause in controversy covers under the rule of construction invoked.

The following articles specified in said clause: Tire steel, felloe plates, bolts, screws, rivets and glue, are clearly materials in the same sense that spokes, rims and hub blocks are materials, because they become part of the finished wheel, but it is equally as clear that sand, sandpaper and sand belts are not materials incorporated into the manufactured wheel, but that they are rather supplies or equipment for machinery used in the process of making fit the materials entering the manufactured wheel, and that they are therefore not materials of the same class; so that in the enumerated articles in this clause we have articles that are materials incorporated into the manufactured wheel, which articles might well be included in the general term ''stock,'' and we have another class of articles enumerated which are not *ejusdem generis* but which are equipment or supplies for the machinery necessary in the transformation of the wheel material into the manufactured wheel, and these articles may be said to be included in the general term ''supplies.'' It is therefore clear that under the rule *ejusdem generis* the final part of this clause ''and other stock and supplies'' would necessarily include and be restricted to articles of two classes, one material and the other supplies for machinery. We therefore conclude that by this clause of the material contract appellee sold and appellant bought all of the stock and supplies that appellee had on hand of the two kinds, enumerated in the clause. Under this construction there can be no doubt that appellant purchased of

appellee the 352 bender straps, 342 bender boards and 198 tie bars which constitute the principal items of controversy here, since these articles are supplies necessary to the operation of the automatic bending machines sold by appellee to appellant in exactly the same sense that sand, sandpaper and sand belts are supplies for a sanding machine also covered by the machinery contract. And while it thus appears that appellee sold to appellant all of the bender straps, bender boards, tie bars and tie straps that he had on hand at the date of the contract, it is shown in the evidence that before the time of delivery he sold a number of these articles to other parties. He states that he did this at the request of Mr. Allen, manager for appellant, and Mr. Fischer, president of the Standard Wheel Company, but both of these gentlemen deny that they requested, authorized or consented to a sale of any of these articles by appellee. The case was tried by a jury, but at the conclusion of the testimony a peremptory instruction was given to find for appellee the market value of the bender boards, bender straps, tie bars and tie straps tendered but less than the number sold, and that this was error is the first reason relied upon by appellant for reversal.

Appellant offered an instruction, which was refused by the court, to the effect that if the jury believed from the evidence that appellee sold on June 14, 1912, bender boards, bender straps, tie bars and tie straps then in his possession and thereafter sold any of these articles without appellant's or the Standard Wheel Company's consent, that appellee could not recover for the value of any of these articles. While the first part of the instruction submitting to the jury whether or not appellee sold these articles was not proper, since that question was a question of law for the court in construing the contract, the latter part of this instruction does present a question for the jury upon which there was an issue which rendered it error for the court to grant a peremptory instruction, because it is the law that the vendor must offer to deliver the full quantity of the thing contracted for in order to constitute a sufficient delivery, and the vendee is not obliged to accept or pay for a less quantity. 35 Cyc. 203; Langan & Taylor S. & M. Co. v. Tennelly, 122 Ky. 808. The proof shows that a less quantity was tendered, which appellee sought to justify upon the ground that it was authorized by agents of appellant and its

associate, but this testimony of appellee is contradicted by the very parties from whom he claims to have had the authority. It is therefore apparent that appellee was not entitled to a directed verdict, but that this question should have been submitted to the jury.

2. Appellant complains that the court was in error in peremptorily instructing the jury to find for appellee in the sum of $144.69 for sundry articles delivered by appellee on June 13, 1913, accompanied by an invoice specifying the price of each article. It is agreed that the articles included in this delivery are covered by the contract of sale, and that appellant was bound to accept same and to pay the market price therefor. As there was a controversy as to what the market prices of the several articles were, it was error for the court to instruct the jury to find for appellee at the prices fixed by him. This question was properly presented in instructions Nos. 1 and 2 offered by appellant. Counsel for appellee contend that the peremptory instruction to find for appellee the amount of the invoice accompanying the articles is proper because appellant retained possession of same. That rule, however, has no application here because appellant had not the right to return the articles simply because he did not agree to the prices stated in the invoice, since by the contract he was obligated to accept and retain these articles and to pay therefor the market price, and appellee was obligated by the same contract to accept the market price, and had no right to impose a condition by the delivery not warranted by the contract, as appellant contends he was attempting to do, which contention is supported by some evidence that the contract price of some of the articles was less than stated by appellee in the invoice. To compel appellant either to return the articles or submit to an arbitrary price fixed by appellee would ignore their contract.

3. Appellant also complains of the allowance of interest upon the delivery of June 13, 1913, from the date of that delivery, and of interest upon the bender boards, etc., from the date that appellee offered to deliver and appellant refused to accept same, but we find no merit in this contention since by the contract appellant was bound to pay to appellee the market price of these articles upon delivery, and to have avoided the interest on such articles, it must have tendered to appellee the market

price of these articles that were delivered on June 13, 1913, and of such articles tendered in December, 1912, which under the contract it was bound to accept, if any.·

For the reasons indicated the judgment is reversed and remanded for proceedings not inconsistent herewith.